**THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER RYAN MORGAN,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Civil Action File No.** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **CITY OF LAWRENCEVILLE; TIM** | **:** | |
| **WALLIS, in his individual capacity as** | **:** | |
| **Chief of Police; DAVID STILL, in** | **:** | |
| **his individual capacity as Mayor;** | **:** | |
| **TAWNYA GILOVANNI, in her** | **:** | |
| **individual capacity as Captain; and** | **:** | |
| **CHUCK WARBINGTON, in his** | **:** | |
| **individual capacity as City Manager,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| _____: | | |

## <u>COMPLAINT</u>

Plaintiff, Christopher Ryan Morgan ("Plaintiff"), by and through counsel undersigned, files this Complaint against Defendant, City of Lawrenceville (the "City"), and Defendants, Chief of Police, Tim Wallis, Mayor of the City, David Still, Captain Tawnya Gilovanni, and the City Manager, Chuck Warbington, each in their individual capacity ("Wallis," "Still," "Gilovanni" and "Warbington"), (the City, Wallis, Still, Gilovanni and Warbington are collectively referred to herein as "Defendants").  Plaintiff shows the Court, as follows:

- 1 -

## Authority

**1.**

This cause of action arises under the provisions of 42 U.S.C. § 1983 ("Section 1983") seeking a remedy for sex discrimination and retaliation and for violation of Plaintiff's First Amendment rights and retaliation all of which occurred during Plaintiff's employment with the City of Lawrenceville Police Department.

**2.**

All jurisdictional prerequisites to the institution of Plaintiff's lawsuit have been fulfilled.

## Parties, Jurisdiction and Venue

**3.**

Plaintiff is a resident of Morgan County, Georgia.

**4.**

The City is a governmental entity and subdivision of the State of Georgia and is legally responsible for the City of Lawrenceville Police Department, a department operating within, and on behalf of, the City. The City's principal office address is 70 South Clayton Street, Lawrenceville, Georgia 30046. The City may be served via its City Manager, Chuck Warbington, at the same address.

**5.**

Wallis' principal office address is City of Lawrenceville, 70 South Clayton Street, Lawrenceville, Georgia 30046. Wallis may be served at the same address.

**6.**

Still's principal office address is City of Lawrenceville, 70 South Clayton Street, Lawrenceville, Georgia 30046. Still may be served at the same address.

**7.**

Gilovanni's principal office address is City of Lawrenceville, 70 South Clayton Street, Lawrenceville, Georgia 30046. Gilovanni may be served, via the City Manager, at the same address.

**8.**

Warbington's principal office address is City of Lawrenceville, 70 South Clayton Street, Lawrenceville, Georgia 30046. Warbington may be served at the same address.

**9.**

Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1337.

**10.**

Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district as Defendants exist or hold office within the County of Gwinnett, State of Georgia.

## Factual Allegations

**11.**

Plaintiff was hired in January of 2000, as a Patrol Officer in the City of Lawrenceville Police Department (the "Department"), in Lawrenceville, Georgia. Plaintiff was progressively promoted during his 22 year tenure and held the rank of Captain in the Criminal Investigation Bureau at the time of his constructive discharge, in December of 2021.

**12.**

On or about May 24, 2019, Defendants promoted Tawnya Gilovanni ("Gilovanni"), a female, to the rank of Captain, despite her being completely unqualified for the position.

**13.**

Several qualified applicants were passed over for this promotion to Captain, due to Defendants' stated desire for "diversity" within the Department.

**14.**

Several qualified individuals were passed over for promotion, and instead, the less-qualified, less-experienced female, Gilovanni, without participating in the competitive process and/or moving up through the ranks, was promoted to the position of Captain.

**15.**

Significantly, Defendants all participated in this discriminatory promotion process, via the decision to discriminatorily promote Gilovanni by promoting an unqualified female over more qualified males, under the guise of "diversity."

**16.**

In other words, the decision to promote Gilovanni, was made on the basis of her sex and gender.

**17.**

On June 28, 2019, Wallis was quoted in an Atlanta Journal-Constitution article:

> Chief Wallis sees Gilovanni's promotion to captain as part of a larger effort to diversify the Department. In the year since he took the chief job, he's added more women and people of color to the Department's hiring boards. Of the nine people hired in the past year, six have been "diverse candidates" Wallis said.
>
> "Law enforcement agencies are trying to reflect what their communities are, and I think we have lagged behind in years past," Wallis said. "We are moving forward with making the department reflective of what the community looks like."

**18.**

In a similar instance, in approximately 2018, a Black Corporal in the Gwinnett County Sheriff's Office, Myron Walker ("Walker"), was recruited by Warbington

and Wallis to work for the Department. Walker was brought into the Department as a Major and given the position of Assistant Police Chief.

**19.**

As in the case regarding Gilovanni, other qualified and eligible individuals within the Department, were passed over for the position of Assistant Police Chief.

**20.**

Significantly, Defendants all participated in this discriminatory promotion process, via the decision to discriminatorily recruit and promote Walker, a Black male, under the guise of "diversity" instead of promoting a qualified White individual from within the Department.

**21.**

In other words, the decision to recruit Walker was made on the basis of his race.

**22.**

Several qualified individuals within the Department were passed over for promotion, and instead, a Black employee of the Gwinnett County Sheriff's Office was brought in by Defendants and given the position of Assistant Police Chief, without him participating in the competitive process and/or moving up through the ranks within the Department.

**23.**

All of this had a negative impact on the Department, and morale among the more qualified, more experienced, White and male individuals deteriorated due to them being passed over for the positions of Captain and/or Assistant Police Chief.

**24.**

Eventually, Wallis was investigated for sexual harassment. During that investigation, Wallis admitted in an interview with the media, that (as was always suspected by most everyone in the Department), Gilovanni and Walker were promoted, in an effort by Wallis, Still and Warbington, to foster diversity in the Department, not because either one had earned their promotions, nor because they were the most qualified for the positions they were given.

**25.**

In October of 2021, the Department engaged a third party to investigate a myriad of allegations made by Gilovanni against the Department, in general, the City Administration, and against Plaintiff, specifically.

**26.**

Gilovanni made multiple accusations of receiving inappropriate comments of a sexual nature from Plaintiff.

**27.**

However, the fact is that it was known Department-wide that Gilovanni herself routinely engaged in lewd and unprofessional behavior, which actually invited sexual comments from others by constantly, and loudly, making extremely inappropriate comments, such as:

- stating that, she was "going home to get some d*ck," since she and her husband had their kids at a babysitter;

- asking other employees, "[d]o you want to see pictures of my shaved kitty?" as an innuendo referencing her genitalia and her recently groomed cat;

- in the middle of police headquarters exclaiming "[m]y d**k might be bigger than all ya'll's;"

- "I've got a bigger set of balls than all of you;" and

- "I get my shit waxed. There ain't any grass on my playing field" as she rubbed her hand across the front of her pants.

**28.**

When Plaintiff engaged in similar conversation with Gilovanni, she wrongly and surprisingly accused Plaintiff of sexual harassment.

**29.**

Oddly, Plaintiff, a White male, with a rock-solid work record, and having consistently received excellent Performance Reviews throughout his tenure of 22 years, was earmarked for termination following the third party investigation.

Conversely, the female Gilovanni, who routinely made inappropriate and crass sexual comments for anyone in the Department to hear, and who kept a "titty" chart, illustrating possible moods, based on the appearance of a woman's breasts, posted on her office wall, was <u>never</u> investigated, reprimanded or disciplined.

**30.**

Wallis, Warbington and Still were aware of the false allegations being made by Gilovanni against Plaintiff, prior to the conclusion of the third-party investigation, as Gilovanni had detailed the same or similar allegations to Warbington and Steve North, Deputy City manager, in November of 2021.

**31.**

Prior to the conclusion of the investigation, Plaintiff met with Warbington. During that meeting, it was acknowledged that the investigation was leading up to the termination of Plaintiff, and possibly others.

**32.**

Plaintiff advised Warbington that, if he (Plaintiff) agreed to be interviewed by the third party investigator, that he would not hold back anything that he knew in regard to the inner workings of the City, the Department, and his knowledge regarding the inappropriate involvement of Wallis' wife in Departmental business, etc. It was Warbington's choice that Plaintiff decline to be interviewed.

**33.**

Following this meeting with Plaintiff, Warbington granted every employment-related accommodation Plaintiff requested, as well as writing a glowing letter of recommendation in regard to Plaintiff and his 22 years of faithful service.

**34.**

Likewise, Still provided Plaintiff with an excellent letter of recommendation and sadly stated "I just can't believe that you're not going to be here anymore."

**35.**

Rather than having his 22 year law enforcement career and reputation damaged with the stain of termination, Plaintiff was forced by the Defendants to resign from his position, on December 31, 2021.

**Plaintiff Speaks Out Against "Diversity"**

**36.**

Plaintiff, on several occasions, voiced his opposition to the Police Chief, Tim Wallis ("Wallis"), regarding Gilovanni being promoted to the rank of Captain, and pointed out Gilovanni's many shortcomings, i.e.:  she did not have a Master's degree; she had never been a supervisor in the Department; and, she had limited experience

on the street, as, for the most part, she worked in-house in the Criminal Investigation Department, investigating crimes against children.

**37.**

Plaintiff told Wallis, and others, that it was unfair, that Gilovanni was not qualified as she was only a Detective, and would need to jump three ranks from Detective, Sergeant and Lieutenant to the Captain position.

**38.**

Plaintiff told Wallis and others, that Gilovanni was only promoted because she was female, that she was unqualified and she was incompetently handling the largest bureau in the agency, and that no one could get things done because she was unable to make a decision based on her lack of supervisory experience, training and qualifications.

**39.**

Plaintiff also complained that Wallis planned to promote Gilovanni all along even before the position was posted and that the job description was being specially rewritten so that Gilovanni would qualify, despite her Detective rank and lack of other training and qualifications.

**40.**

Plaintiff complained to Wallis and Captain Byers that Gilovanni was in over her head and that she was only promoted because she was a female.

**41.**

Plaintiff expressed opposition to Gilovanni's promotion on the grounds that she was not qualified for the position of Captain.

**42.**

Plaintiff said to Wallis directly, "Tim, do not do this. You will cause morale in the Department to go down and she does not have the experience to do the job. You are setting her up for failure. If you want a female in the name of diversity, then post the job and let's go find the right female for the job."

**43.**

In reluctant support of Chief Wallis' decision, Plaintiff said "If she fails, we fail" to further express his concern for promoting an unqualified person to the position of Captain.

**44.**

Plaintiff also complained to Wallis, and others, that Gilovanni's promotion was solely for diversity due to the media being present at her promotion, and the news articles that followed referencing the first female supervisor in the Department.

**45.**

Historically, the media was never invited to promotion ceremonies prior to Gilovanni's promotion.

**46.**

Because of Plaintiff's complaints about Gilovanni as well as her being unqualified for her position and the Department's pursuit of "Diversity," Gilovanni embarked on a plan to falsely accuse Plaintiff and others of sexual harassment in order to get Plaintiff terminated.

**47.**

Gilovanni falsely instigated an investigation of Plaintiff for sexual harassment that resulted in the Glanton Report, where she attempted to influence the investigation by omitting parts of the evidence in order to paint herself in a better light, at the expense of the Plaintiff.

**48.**

Gilovanni's motives for falsely accusing Plaintiff of sexual harassment were to remove him from his position because he had spoken out on protected activity.

**49.**

Because of Plaintiff's complaints, Defendants unfairly targeted Plaintiff for investigation and constructive discharge for alleged violations that other similarly

situated coworkers were neither investigated, reprimanded, nor constructively discharged.

## COUNT I
### (Gender Discrimination and Retaliation under 42 U.S.C. § § 1983, *et seq.,* 14th Amendment of U.S. Constitution - Against all Defendants)

### 50.

Defendants discriminated and retaliated against the Plaintiff, forcing him to resign on December 31, 2021, because he spoke out against and opposed unconstitutional gender "diversity" discrimination within the Department.

### 51.

Prior to his constructive discharge, Plaintiff spoke out against and opposed the Defendants' stated policy of gender "diversity" so that he was retaliated against, resulting in his retaliatory constructive discharge. Some of those acts of retaliation included unwarranted internal affairs investigations, ignoring evidence of female employee wrongdoing, and sexual innuendo, all in an effort to terminate the Plaintiff.

### 52.

Defendants treated City and/or Department employees accused of the same or similar infractions as Plaintiff much differently than Defendants treated Plaintiff, because of his gender.

**53.**

While Plaintiff was pretextually investigated and/or disciplined for suspicion of making inappropriate comments of a sexual nature, while Gilovanni and other female City and/or Department employees suspected of, or even known to have engaged in the same activities, were not investigated, let alone reprimanded or disciplined in any way during the time Plaintiff was employed in the Department.

**54.**

Defendants retaliated against Plaintiff by depriving him of rights secured by the United States Constitution or federal law, and those deprivations occurred under color of state law.

**55.**

Defendants retaliated against Plaintiff by violating his rights protected by the United States Constitution and federal statutes and regulations, under color of state law, and local ordinances regulations, customs or usages in violation of 42 U.S.C. § 1983.

**56.**

The conduct of Defendants retaliating against Plaintiff for speaking out against gender "diversity" discrimination amounts to retaliation in violation of

Plaintiff's rights under the Equal Protection Clause of the 14th Amendment to the United States Constitution.

**57.**

This retaliation was proximately caused by Defendants, who were acting under color of state law, and local ordinances, regulations, customs and usages, in violation of 42 U.S.C. § 1983.

**58.**

Defendants retaliated against Plaintiff in violation of 42 U.S.C. § 1983, *et seq.*, by denying Plaintiff the equal benefits as those enjoyed by female employees of Defendants.

**59.**

Acting through their officers and supervisors, Defendants engaged in retaliation described in this Complaint, intentionally or with reckless indifference to the rights of Plaintiff. Defendants' actions were deliberate and were carried out with forethought to punish and discriminate against Plaintiff with callous and/or reckless indifference to Plaintiff's federally protected rights.

**60.**

Defendants' retaliatory actions violated Plaintiff's rights under the 14th Amendment's Equal Protection Clause. Specifically, Defendants treated Plaintiff

differently, without sufficient cause, when they constructively discharged him because of his stated opposition to the unfair policy of promotion and retention of employees because of gender "diversity" in the Department.

## 61.

Plaintiff's retaliatory constructive discharge was caused by an official policy, practice, or custom of the City and/or ordered by a person whose decisions created such policy, practice, or custom.

## 62.

Defendants willfully, wantonly, and intentionally violated 42 U.S.C. § 1983, and the Equal Protection Clause in reckless and callous disregard of Plaintiff's federally protected rights.

## <u>COUNT II</u>
**(Constructive Discharge and Retaliation Against a Public Employee in Violation of the 1st and 14th Amendments to the U.S. Constitution as enforced under 42 U.S.C. § 1983 - Against the City, Wallis, Still, Gilovanni and Warbington)**

## 63.

The 1st and 14th Amendments to the United States Constitution prohibit governmental decision-makers and employers from retaliating against employees who speak out on matters of public concern. Plaintiff has freedom of speech rights

that prevent his unconstitutional constructive discharge and retaliation by the Defendants.

**64.**

The Defendants' interests did not outweigh the Plaintiff's interests in speaking out on those matters of public concern because citizens should have qualified, capable police officers able to handle their job responsibilities to serve and protect the public.

**65.**

Plaintiff shows that (1) his speech was on a matter of public concern; (2) his 1st Amendment interest in engaging in the speech outweighed the Defendants' interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) his speech played a substantial part in the employer's decision to demote or discharge the employee.

**66.**

Gender "diversity" at the Department is nothing more than unconstitutional gender preference in the workplace and Plaintiff is entitled to speak out against such a policy.

**67.**

In a prior case, Wallis discussed in his deposition the need for "diversity" when he was first hired into the Department.  *Wallis v. Lawrenceville*.

**68.**

When asked about his initial hiring, Wallis admitted that he was tasked with changing the "frat boy culture" or changing the Department by Warbington. [See, Case No. 1:22-cv-01180-WMR, Wallis Deposition, Doc. 23, pg. 22; Deposition pg. 82, ll. 18-20] ("That was one of the charges that Mr. Warbington had given, was to try to diversify the police department."). Wallis even opined that unlike his predecessor, who "did not appreciate diversity," Wallis believes that diversity does help change a culture. [*Id.*, Doc. 23, pg. 21, pg. 80, ll. 20-26.]

**69.**

After Warbington tasked Wallis to diversify the Department, in 2023, the City was awarded a Community Impact Award for its Diversity, Equity, and Inclusion initiatives, with Warbington accepting the award. Clearly, Warbington wants, values, and thinks diversity or "increasing diverse voices in government" is an important goal for the City he manages.

**70.**

Plaintiff spoke out about what he believed were serious activities surrounding the pursuit of gender "diversity" at the expense of Department competency: that Gilovanni should not be promoted simply because she was female; that she was only a Detective and via promotion, was jumping three ranks, which were all in violation of Department policy regarding the proper promotion process, as well as qualifications to be promoted. Plaintiff's discussions with his coworkers constituted protected exercise of his Constitutional right of free speech and right to petition for redress of grievances.

**71.**

In speaking with his supervisor and coworkers, Plaintiff spoke out on Departmental rank and qualifications, as well as security and safety issues that were matters of public concern. In a democratic society, citizens are allowed to associate and speak freely on matters of public safety and concern.

**72.**

The purported gender "diversity" doctrine that females were to be preferred to males, that they need not be qualified, that they could jump three ranks from Detective to Sergeant to Lieutenant to Captain is a per se violation of the Constitution and the 1st and 14th Amendments.

**73.**

In the constructive discharge of Plaintiff, Defendants retaliated against Plaintiff because he engaged in protected speech.

**74.**

In the alternative, Plaintiff was retaliated against and ultimately constructively discharged for opposing, or being perceived as opposing, the discriminatory promotion of Gilovanni.

**75.**

Plaintiff's protected speech against gender "diversity" was never disruptive or somehow harmful to the Department, but instead was respectful and professional while never interfering with the chain of command or morale in the Department.

**76.**

Plaintiff was never warned by the Defendants to cease his protected speech or stop speaking out on matters of public concern or that his speech was somehow disrupting the chain of command or negatively affecting departmental morale.

**77.**

Defendants violated Plaintiff's 1st Amendment rights, culminating in both a retaliatory investigation and a final constructive discharge.

**78.**

Defendants forced Plaintiff to resign for alleged violations that were completely ignored, or which did not result in an investigation, reprimand, constructive discharge, or termination, for other similarly situated public employees.

**79.**

Defendants unfairly ignored conflicts of interest and bias in their investigation procedures and hearing decision-makers, so as to wrongly implicate Plaintiff for reprimand and termination.

**80.**

Defendants' actions have deprived Plaintiff of his right to petition for redress of his grievances and his right to freedom of speech as guaranteed by the 1st and 14th Amendments to the United States Constitution.

**81.**

The individual Defendants are not entitled to qualified immunity because, at the time of Plaintiff's retaliatory investigation and constructive discharge, illegal race and gender preferences in public employment were unconstitutional, so Plaintiff was entitled to speak out against this unconstitutional policy and conduct without fear of reprisal or termination.

**82.**

This violation of rights was proximately caused by Defendants, who were acting under color of state law, and local ordinances, regulations, customs or usages of the City in violation of 42 U.S.C. § 1983.

**83.**

Defendants' unlawful conduct violated clearly-established law.

**84.**

As a direct and proximate result of the Defendants' actions, Plaintiff has suffered damages, including the end of his career as a police officer, emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

**85.**

Defendants undertook their unlawful conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Defendants.

**COUNT III**

**(Gender Discrimination and Retaliation in Defendants Constructive Discharge of Plaintiff- 42 U.S.C. §§ 1983: Violation of Substantive Rights Guaranteed by 42 U.S.C. § 1983 - Against the City, Wallis, Still, Gilovanni and Warbington)**

**86.**

Defendants deprived Plaintiff of his rights, secured by the United States Constitution or federal law, and those deprivations occurred under the color of state law when Defendants forced Plaintiff to resign, on or about December 31, 2021.

**87.**

Defendants violated Plaintiff's federal rights protected by the United States Constitution, 14th Amendment, and federal statutes and regulations under color of state law, and local ordinances regulations, customs, or usages in violation of 42 U.S.C. § 1983.

**88.**

The conduct of Defendants in the constructive discharge of Plaintiff, based on his gender, is in violation of Plaintiff's rights under the Equal Protection Clause of the 14th Amendment to the United States Constitution.

**89.**

This violation of rights was proximately caused by Defendants, who were acting under color of state law, and local ordinances, regulations, customs and usages in violation of 42 U.S.C. § 1983.

**90.**

Defendants discriminated against Plaintiff in violation of 42 U.S.C. § 1983, *et seq.*, by denying Plaintiff the same contractual rights to employment enjoyed by female employees of Defendants.

**91.**

Defendants further discriminated against Plaintiff in violation of 42 U.S.C. § 1983, by denying Plaintiff the equal benefits as those enjoyed by female employees of Defendants.

**92.**

Acting through their officers and supervisors, Defendants engaged in the gender discrimination described in this Complaint, intentionally or with reckless indifference to the rights of Plaintiff. Defendants' actions were deliberate and were carried out with forethought to punish and discriminate against Plaintiff with callous and/or reckless indifference to Plaintiff's federally protected rights.

**93.**

While Plaintiff was investigated and/or disciplined for inappropriate sexual comments, Gilovanni and other female City and/or Department employees suspected of, or even known to have engaged in inappropriate sexual comments, were not investigated, let alone disciplined in any way, during the time Plaintiff was employed in the Department.

**94.**

The City has municipal liability under 42 U.S.C. § 1983 because Plaintiff shows (1) that his Constitutional rights were violated; (2) that the City had a custom or policy (i.e., the pursuit of "diversity") that constituted deliberate indifference to that Constitutional right; and (3) that the policy or custom caused the violation.

**95.**

Defendants' differential treatment of males was both a persistent and widespread practice attributable to the City that took on the force of law.

**96.**

Plaintiff's constructive discharge was caused by an official policy, practice, or custom of the City and/or ordered by a person whose decisions created such policy, practice, or custom.

**97.**

In addition, Wallis, Still, Gilovanni and Warbington are supervisors and officials, who had final policymaking authority regarding Plaintiff's constructive discharge so that their discriminatory actions are fairly deemed to represent formal City policies.

**98.**

Because these decision-makers possess final policymaking authority to establish municipal policy with respect to terminations in their Department, the City is liable.

**99.**

In the alternative, the City delegated final policymaking authority to individuals who discriminated against the Plaintiff in his constructive discharge under their unconstitutional "diversity" doctrine.

**100.**

Defendants' gender-discriminatory acts and omissions caused the Plaintiff to suffer tangible job detriments, as well as mental anguish and personal humiliation, for which he seeks damages in an amount to be determined at trial.

**101.**

Defendants' gender discrimination was willful and intentional and has directly caused Plaintiff's damages, further entitling him to an award of costs and attorney's fees, in an amount to be determined at trial.

**102.**

Defendants violated Plaintiff's federal rights protected by the United States Constitution and federal statutes and regulations under color of state law, and local ordinances regulations, customs or usages in violation of 42 U.S.C. § 1983.

**103.**

The conduct of Defendants in the constructive discharge of Plaintiff, based upon his gender, is in violation of Plaintiff's rights under the Equal Protection Clause of the 14th Amendment to the United States Constitution.

**104.**

This violation of rights was proximately caused by Defendants, who were acting under color of state law, and local ordinances, regulations, customs and usages in violation of 42 U.S.C. § 1983.

**105.**

Defendants discriminated against Plaintiff, a male, because of his gender, in order to promote their discriminatory pursuit of "diversity" within the Department.

**106.**

Defendants willfully, wantonly, and intentionally violated Section 1983 and the Equal Protection Clause, in reckless and callous disregard of Plaintiff's federally protected rights.

**Defendant Chief of Police Wallis**

**107.**

Wallis, sued in his individual capacity, is not entitled to qualified immunity which protects a government official performing a discretionary function.

**108.**

At the time of Plaintiff's constructive discharge, Wallis was acting in his discretionary capacity to terminate employment in his Department.

**109.**

Plaintiff has a clearly-established right to be free from discrimination in the public workplace. Wallis, as a reasonable Chief of Police, knew that the constructive discharge of the male Plaintiff, while ignoring the same conduct by other similarly situated female employees, such as Gilovanni, violated clearly-established law. Also, subjecting male employees to alleged write-ups and poor performance reviews, while similarly situated female employees were not so punished because of gender, violated clearly-established law.

**110.**

In the alternative, Wallis had, at the least, mixed motives for his constructive discharge decisions, so that he is not entitled to qualified immunity.

**Defendant Mayor Still**

**111.**

Still, sued in his individual capacity, is not entitled to qualified immunity which protects a government official performing a discretionary function.

**112.**

At the time of Plaintiff's constructive discharge claim, Still was acting in his discretionary capacity to terminate employment in his Department.

**113.**

Plaintiff has a clearly-established right to be free from discrimination in the public workplace. Still, as a reasonable elected official, knew that the constructive discharge of the male Plaintiff, while ignoring the same conduct by other similarly situated female employees, such as Gilovanni, violated clearly-established law. Also, subjecting male employees to alleged write-ups and poor performance reviews, while similarly situated female employees were not so punished because of gender, violated clearly-established law.

**114.**

In the alternative, Still had, at the least, mixed motives for his constructive discharge decisions, so that he is not entitled to qualified immunity.

**Defendant Captain Gilovanni**

**115.**

Gilovanni, sued in her individual capacity, is not entitled to qualified immunity which protects a government official performing a discretionary function.

**116.**

At the time of Plaintiff's constructive discharge claim, Gilovanni was acting in her discretionary capacity to investigate employees or terminate employment in her Department.

**117.**

Plaintiff has a clearly-established right to be free from discrimination and retaliation in the public workplace. Gilovanni, as a reasonable Captain and immediate supervisor of Plaintiff, knew that the investigation and constructive discharge of the male Plaintiff, while ignoring the same conduct of herself and other similarly situated female employees, violated clearly-established law. Also, subjecting male employees to alleged investigations, false allegations, half-truths, write-ups, and poor performance reviews, while similarly situated female employees

such as herself were not so punished because of gender, violated clearly-established law.

### 118.

In the alternative, Gilovanni had, at the least, mixed motives for her investigation and constructive discharge decisions, so that she is not entitled to qualified immunity.

**Defendant City Manager Warbington**

### 119.

Warbington, sued in his individual capacity, is not entitled to qualified immunity which protects a government official performing a discretionary function.

### 120.

At the time of Plaintiff's constructive discharge claim, Warbington was acting in his discretionary capacity to terminate employment in his Department.

### 121.

Plaintiff has a clearly-established right to be free from discrimination in the public workplace. Warbington, as a reasonable City Manager, knew that the constructive discharge of the male Plaintiff, while ignoring the same conduct by other similarly situated female employees, such as Gilovanni, violated clearly-established law. Also, subjecting male employees to alleged write-ups and poor

performance reviews, while similarly situated female employees were not so punished because of gender, violated clearly-established law.

### 122.

In the alternative, Warbington had, at the least, mixed motives for his constructive discharge decisions, so that he is not entitled to qualified immunity.

### <u>COUNT IV</u>
### (Tortious Interference with employment by Gilovanni for Constructive Discharge of Plaintiff-O.C.G.A. §§ 51-9-1 & 51-12-30)

### 123.

Gilovanni tortiously interfered with Plaintiff's employment with the City of Lawrenceville.

### 124.

Plaintiff had an absolute right to continued employment with the City of Lawrenceville. Still, Gilovanni unlawfully interfered with such employment by falsely and maliciously accusing him of sexual harassment and other alleged workplace violations, knowing full well that she was the instigator of the alleged sexually harassing conversations and violations.

### 125.

Gilovanni maliciously procured Plaintiff's termination, which was both an unauthorized interference and interference without legal justification or excuse.

**126.**

Gilovanni procured Plaintiff's termination by her advice, counsel, persuasion, and command in the investigation of her false sexual harassment claims.

**127.**

Gilovanni's false accusations, as detailed in the Glanton Report, were false or half-truths asserted to tortiously interfere with Plaintiff's employment without privilege or justification.

**128.**

Gilovanni knew of Plaintiff's 22-year exemplary employment with the Department, yet she intentionally set out to end that employment relationship with her false accusations, rumors lies, hyperbole and innuendo.

**129.**

Gilovanni's tortious interference was done out of malice toward Plaintiff, who had legitimately opposed her promotion because she was completely unqualified and had barely served as a Detective before her three rank promotion to Captain.

**130.**

Gilovanni's tortious interference was accomplished by her malicious use of fraud, misrepresentation, and defamation toward Plaintiff.

**131.**

Because of  Gilovanni's tortious interference with his employment, Plaintiff lost his career, wages, benefits, retirement and suffered both compensatory and punitive damages in an amount yet to be determined at trial.

<u>**COUNT V**</u>
**(Intentional Infliction of Emotional Distress by Gilovanni)**

**132.**

Defendant Gilovanni intentionally inflicted emotional distress upon Plaintiff by her false and defamatory statements and accusations against Plaintiff in order to get him terminated from the City. Additionally, she used half-truths and other devices to falsely paint herself as a victim in order to get Plaintiff investigated and terminated so that she could receive a monetary settlement.

**133.**

Gilovanni's false accusations, as detailed in the Glanton Report, were false or half-truths in order to cause Plaintiff emotional distress and were without privilege or justification.

**134.**

Plaintiff had an absolute right to continued employment with the City. Gilovanni's conduct was so extreme, outrageous and egregious that she falsely accused and made false accusations against Plaintiff to get him terminated.

**135.**

Gilovanni was motivated to falsely accuse Plaintiff of sexual harassment to procure a monetary settlement with the City for her false sexual harassment claims.

**136.**

Because of Gilovanni's intentional infliction of emotional distress toward the Plaintiff,  it caused severe emotional distress and also resulted in him losing his career, wages, benefits and retirement, while suffering both compensatory and punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendants, as follows:

(a)    That Defendants be ordered to formulate, distribute and implement a written policy which does not discriminate or violate in any manner which is a violation of the equal protection clause, 1st Amendment, 42 U.S.C. § 1983;

(b)    That Defendants be ordered to rehire, compensate, reimburse and make whole the Plaintiff for all benefits he would have received had it not been for Defendants' illegal actions;

(c)     That Plaintiff recover compensatory damages for Defendants' willful violations of the Equal Protection Clause, 1st and 14th Amendments, 42 U.S.C. § 1983;

(d)     That Plaintiff be awarded compensatory damages to compensate for the humiliation, pain, suffering and stigma associated with discrimination and retaliation;

(e)     That Plaintiff be awarded punitive damages to punish Defendants for their unlawful actions;

(f)     That Plaintiff recover costs and expenses of litigation including an award of reasonable attorney's fees;

(g)     That Plaintiff recover prejudgment interest;

(h)     That this Court issue a declaratory judgment that the practices complained of are unlawful and void; and

(i)     For such other and further relief as this Court deems just and proper.

## **Jury Demand**

Plaintiff herein demands a trial by jury of all issues in this action.

Dated this 21st day of December 2023.

**PANKEY & HORLOCK, LLC**

By: _/s/ Larry A. Pankey_
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone:  770-670-6250
Facsimile:   770-670-6249
LPankey@PankeyHorlock.com

## <u>CERTIFICATION OF FONT SIZE</u>

Pursuant to Local rule 5.1(C) of the Local Rules of the United States District Court for the Northern District of Georgia, I, Larry A. Pankey, of Pankey & Horlock, LLC, attorney for Plaintiff, Christopher Ryan Morgan, hereby certify that the foregoing **Complaint** is typewritten in MS Word using Times New Roman font, fourteen (14) point type.

Dated this 21st day of December 2023.

**PANKEY & HORLOCK, LLC**

By:   */s/ Larry A. Pankey*
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

**THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER RYAN MORGAN,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Civil Action File No.** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **CITY OF LAWRENCEVILLE; TIM** | **:** | |
| **WALLIS, in his individual capacity as** | **:** | |
| **Chief of Police; DAVID STILL, in his** | **:** | |
| **individual capacity as Mayor;** | **:** | |
| **TAWNYA GILOVANNI, in her** | **:** | |
| **individual capacity as Captain; and** | **:** | |
| **CHUCK WARBINGTON, in his** | **:** | |
| **individual capacity as City Manager,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| _____ | **:** | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing

**Complaint** with the Clerk of Court using the CM/ECF system.

Dated this 21st day of December 2023.

**PANKEY & HORLOCK, LLC**


By:  /s/ *Larry A. Pankey*
      Larry A. Pankey
      Georgia Bar No. 560725
      *Attorneys for Plaintiff*

- 40 -

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone:  770-670-6250
Facsimile:   770-670-6249
LPankey@PankeyHorlock.com